105 Cal.Rptr.2d 890 (2001)
88 Cal.App.4th 539
The PEOPLE, Plaintiff and Respondent,
v.
Lonnie JOHNSON, Defendant and Appellant.
No. B139943.
Court of Appeal, Second District, Division Seven.
April 16, 2001.
Review Granted July 25, 2001.
*891 Katharine Eileen Greenebaum, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollock, Senior Assistant Attorney General, Scott A. Taryle and Thien Huong Tran, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
WOODS, J.
Lonnie Johnson appeals his convictions on one count of continuous sexual abuse upon a minor and other multiple counts of lewdness and sodomy. He claims the court erred in denying him an opportunity to cross-examine the victim's mother on allegations of the victim's past molestation experiences. In the unpublished section of this opinion, we find any error in excluding this evidence harmless.
Johnson also asserts the court erred in staying the sentences, rather than striking the convictions on the individual lewdness and sodomy counts. Johnson is correct. Johnson was charged with and convicted of continuous sexual abuse and individual sexual felonies which allegedly occurred during the same time period as the continuous sexual abuse. Pursuant to Penal Code [1] section 288.5, subdivision (c), however, such charges must be alleged in the alternative. The prosecutor failed to comply with section 288.5, subdivision (c). Accordingly, we reverse his convictions for the individual counts of lewdness and sodomy, but affirm his conviction for continuous sexual abuse.

*892 FACTUAL AND PROCEDURAL HISTORY

In February 1998, the then seven year old, Robert W. told his mother Johnson had been "messing with him" and "humping" him for two years. Johnson, who Robert W. called "Uncle Lonnie," was Robert W.'s mother's "best friend" for 15 years and "babysat" Robert W. and his younger brother on a number of occasions from 1995 until 1998.
Johnson was arrested and charged with one count of continuous sexual abuse from September 1995 through February 1998 (Count 1); four counts of forcible lewd acts upon a child (Counts 2-3 & 5-6) and one count of sodomy (Count 4). All of the individual counts allegedly occurred during the same time period as Count 1.
At trial, Robert W. testified that on three occasions when he was five years old, Johnson babysat him while his mother and step-father were away from the home. According to Robert W., on each of these occasions Johnson undressed himself and then forcibly undressed Robert W. and ordered Robert W. to "suck his penis." When Robert W. refused, Johnson forced Robert W. down on his knees and inserted his penis into Robert W.'s mouth. Johnson then made Robert W. lie naked on the floor on his back and Johnson got on top of him and moved his body up and down until he ejaculated on Robert W. Afterwards, Johnson threatened to whip Robert W. with his belt if Robert W. told anyone.
Similar incidents occurred when Robert W. was six years old. Robert W. testified on one occasion, Johnson lay naked on top of Robert W. and touched Robert W.'s butt with his penis. Johnson also forced Robert W. to kiss him on the lips. During another incident also while Robert W. was six, Johnson hit Robert W. with his belt before he forced the child to lie naked on the ground. Johnson lay on top of Robert W. and kissed him. He also forced his penis into Robert W.'s mouth and touched Robert W.'s penis. Robert W. asked Johnson why he was behaving in this manner. Johnson replied he had done "it to other kids."
Robert W. testified that the abuse continued on two occasions when he was seven years old. As with the prior incidents, they occurred while Johnson babysat Robert W. As before, Johnson forced his penis into Robert W.'s mouth, touched Robert W.'s penis and touched Robert W.'s butt. The second instance occurred when Johnson spent the night at Robert W.'s house. During the night, Johnson forced himself upon Robert W., laid on top of the child so their penises were touching; Johnson also put his penis inside Robert W.'s butt, and whipped the child with his belt. Robert W.'s mother testified that the next morning she found blood in Robert W.'s boxer shorts. After each incident, Johnson threatened to beat Robert W. if he told anyone about the abuse.
Robert W.'s mother also testified during the prosecution's case. She corroborated the facts that Johnson spent time alone with Robert W. and that Johnson spent the night at her home. Her testimony differed from the child as to some of the dates Johnson's babysat Robert W. She also admitted telling Robert W.'s psychologist that when the child was five and six years of age he was oppositional, aggressive, had tantrums and had problems with lying.
The prosecution also presented evidence from sixteen-year-old Daniel C, who testified that when he was Robert W.'s age, he was molested by Johnson. Daniel C. testified Johnson's mother babysat him when he was six and seven years old and often left him with Johnson. When they were alone, Johnson took Daniel C. to the garage, forcibly undressed Daniel C, and made him lie on a mattress on the floor. Johnson took off his pants and lay on top of the minor. Daniel C. testified that Johnson also inserted his penis into Daniel C.'s butt and forced his penis into Daniel C.'s mouth. According to Daniel C, Johnson whipped him with his belt and threatened *893 to beat Daniel C. if he ever reported Johnson. Daniel C. stated that after about a year, he told his grandmother.
Johnson testified on his own behalf. He denied molesting Daniel C. and Robert W. Johnson admitted he spanked Robert W. for disciplinary reasons and claimed Robert had a problem with lying. Nonetheless, Johnson repeated a story he previously told police concerning one occasion when he "accidentally" inserted his penis into Robert W.'s butt. The incident purportedly occurred after Johnson had given Robert W. a bath and had instructed the child to leave the bathroom, put on his pajamas and go to bed. According to Johnson, after Robert W. left the bathroom, he undressed and began to wash himself in the sink. Johnson stated he got an erection. Johnson reported Robert W., still naked, returned to the bathroom. As Johnson pushed Robert W. out of the bathroom, a book fell from the shelf and Robert W. bent over to pick it up. Johnson claimed as Robert W. retrieved the book, and as Johnson pushed the child out of the bathroom, Johnson's penis accidentally went inside Robert W.'s butt about ½ inch for one second. Johnson also claimed Robert W. grabbed Johnson' penis and put it in his mouth; Johnson said he pushed Robert away and told him not to do that again.
During the defense's case, Johnson requested the opportunity to recall Robert W.'s mother to cross-examine her on allegations: (1) prior to age five, Robert W. had been caught and was subsequently kicked out of preschool for "fondling" other children; and (2) at some point Robert W. had been molested while he was staying with his father. As to the molestation incident, Johnson argued the evidence was relevant to explain how Robert W. had knowledge and could describe the sexual conduct without Robert W. having had any sexual contact with Johnson. The trial court denied the request to present this evidence, finding that it was not relevant to any issue in the case.
The jury found Johnson guilty on all of the counts. The court sentenced Johnson to 16 years on the conviction for continuous sexual abuse, and "stayed" the sentences on the individual lewdness and sodomy counts under section 654, finding the conduct in the individual counts was "covered" under the continuous sexual abuse count.
Johnson appeals.

DISCUSSION

I. Exclusion of Evidence of the Victim's Prior Sexual Experience.[**]

II. Penal Code Section 288.5.
Johnson contends the court erred in "staying" his sentences on the individual counts. He asserts the court should have struck the convictions on the individual counts rather than staying the sentences because the charges and convictions violated section 288.5, subdivision (c). As set forth below, we agree.
In analyzing section 288.5 we are guided by the tenets of statutory interpretation. The purpose of statutory construction is to ascertain the intent of the lawmakers to effect the purpose of the law. "`The provisions of the Penal Code are to be construed "according to the fair import of their terms, with a view to effect its objects and to promote justice," ... Nonetheless, the court cannot create an offense by enlarging a statute, by inserting or deleting words, or by giving terms used false or unusual meanings. ... The court must give effect to statutes according to the usual, ordinary import of the language employed in framing them.'" (People v. Gohdes (1997) 58 Cal.App.4th 1520, 1526, 68 Cal.Rptr.2d 719 (Citations omitted.).) The "plain meaning rule" controls: "`if a statute is plain, the court may not go beyond it to find another meaning.... [¶] "If the words convey a definite meaning, *894 which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted (Edgington v. County of San Diego (1981) 118 Cal.App.3d 39, 46, 173 Cal.Rptr. 225.)
Moreover, in interpreting statutes "[significance should be given, if possible, to every word in the act" and "[c]onversely, a construction that renders a word surplusage should be avoided." (Delaney v. Superior Court (1990) 50 Cal.3d 785, 798-799, 268 Cal.Rptr. 753, 789 P.2d 934.) "`When statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it.'" (People v. Gohdes, supra, 58 Cal.App.4th at p. 1526, 68 Cal.Rptr.2d 719.)
Section 288.5, provides:
"(a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years of age at the time of the commission of the offense ... or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.
"(b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number.
"(c) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative...." (Pen.Code, § 288.5, emphasis added.)
Section 288.5, is a "course-of-conduct crime." It was enacted in 1989 in response to People v. Van Hoek (1988) 200 Cal.App.3d 811, 246 Cal.Rptr. 352. In Van Hoek, the defendant was charged with molesting his daughter over a ten-year period. The victim gave "generic testimony" about the instances of abuse; she described the conduct in general, but could not link any instance of abuse with a particular date or event. On appeal, the defendant's convictions were reversed; the court held that the failure to allege and prove specific acts of molestation violated the defendant's right to due process because it denied him a fair opportunity to defend himself. The court also found the generic testimony and the lack of specifics as to time and place made it impossible for the jury to agree upon any specific acts to support a conviction. (Id, at pp. 816-818, 246 Cal.Rptr. 352.)
In enacting section 288.5, the Legislature stated, in an uncodified part of the legislation, its intent was "to provide additional protection for children subjected to continuing sexual abuse and certain punishment for persons referred to as `resident child molesters' by establishing a new crime of continuing sexual abuse of a child under circumstances where there have been repeated acts of molestation over a period of time, and the perpetrator either resides with or has recurring access to the child." (Stats.1989, ch. 1402, § 1.)
In creating a course-of-conduct offense, the Legislature eliminated the due process and unanimity problems perceived in Van Hoek. (See People, v. Jones (1990) 51 Cal.3d 294, 321, 270 Cal.Rptr. 611, 792 P.2d 643 [generally, unanimity on specific acts not required for course-of-conduct crimes].) Course-of-conduct crimes, like section 288.5, provide a benefit to both the prosecution and the defendant. On one hand, section 288.5 lowers the prosecution's evidentiary hurdle by allowing the prosecutor to prove merely a continuous abuse, leaving unclear many of the details *895 which are required to prove an individual count of lewdness under section 288; subdivisions (a) & (b) of section 288.5 reflect this benefit.
On the other hand, section 288.5 provides a clear benefit to the defendant. When a criminal statute punishes a course of conduct, the prosecution may not obtain multiple convictions for both the course of conduct and the individual acts that comprise it. (People v. Cortes (1999) 71 Cal. App.4th 62, 74-76, 83 Cal.Rptr.2d 519.) The Legislature incorporated this characteristic of the course of conduct crime in section 288.5, subdivision (c)-the subdivision at the center of this controversy.
The language of subdivision (c) is clear and unambiguous. On its face, it prohibits the prosecution from charging the defendant with a violation of section 288.5 and any other sexual felony occurring during the same time period, unless the offenses are charged in the alternative. In other words, the defendant cannot be convicted of both continuous sexual abuse and the individual underlying acts of that abuse. Section 288.5, subdivision (c) means what it says: To comply with subdivision (c), the prosecutor may either charge continuous sexual abuse and the individual acts of abuse occurring during the same time period in the alternative; or charge continuous sexual abuse and the individual acts of abuse together (i.e., not in the alternative) when the acts occur during different time periods. The prosecutor may not, however, charge continuous sexual abuse and individual acts of abuse as was done in this case.
Here, the prosecution failed to charge Johnson in accordance with subdivision (c). He was charged with both a continuous course of sexual abuse and individual sexual felonies occurring during the same time period and these offenses were not charged in the alternative. Consequently, Johnson's convictions were obtained in violation of subdivision (c).
Furthermore, "staying" the convictions for the individual counts, as was done here, does not remove the error and is beside the point. In enacting subdivision (c), the Legislature's purpose was not only to prevent the defendant from being "punished" for more than one course of conduct. Indeed, section 654 addresses the matter of punishment and serves to ensure the defendant is punished for only one course of criminal conduct. Instead, through subdivision (c), the Legislature intended the defendant be "charged" and "convicted" for only one course of conduct.
Other cases concerning section 288.5, while not directly addressing this issue, support our conclusion. (See e.g., People v. Hord (1993) 15 Cal.App.4th 711, 721, 19 Cal.Rptr.2d 55 ["There is nothing in section 288.5 ... that precludes the charging of a violation of section 288 in combination with a section 288.5 violation so long as the crimes charged involved different time periods".]; People v. Vasquez (1996) 51 Cal. App.4th 1277, 1286, 59 Cal.Rptr.2d 389 ["Offenses which fit both section 288.5 and another statute may be prosecuted under either, except that a particular act may not be separately charged under a statute other than 288.5 if the act was committed during the same time period as other acts which are charged in the same proceeding under section 288.5"].)
We recognize our conclusion is at odds with the only other appellate court case to confront this matter directly: People v. Valdez (1994) 23 Cal.App.4th 46, 28 Cal. Rptr.2d 236. As here, in Valdez, the defendant was charged and convicted of continuous sexual abuse under section 288.5 and individual counts of lewdness occurring during the same time period. Also like here, the charges in Valdez were not alleged in the alternative and the trial court sentenced the defendant on the continuous sexual abuse conviction and stayed the individual convictions. (Id. at p. 48, 28 Cal.Rptr.2d 236.)
The appellate court, Division Two of this district, affirmed. The Valdez court found *896 no error, concluding defendant was properly charged, convicted and sentenced. The court grounded its analysis on the following rationale. First, subdivision (c) permitted "alternative" charges. Second, the crimes proscribed by section 288 were not lesser offenses necessarily included in section 288.5. (Id. at pp. 48-49, 28 Cal. Rptr.2d 236.) Finally, the court observed: "Inasmuch as the prosecution cannot know in advance which offenses will (1) prevail with the trier of fact, including the trial court sitting as a 13th juror, (2) be subsequently sustained on appeal, and (3) never be retroactively declared invalid [citation omitted], the sentences imposed on the lesser of the `alternative' crimes should merely be stayed...." (Id. at p. 49, 28 Cal.Rptr.2d 236.)
We are not bound by Valdez and we find it unpersuasive. The rationale offered in Valdez may be valid in the abstract and in absence of subdivision (c). However, subdivision (c) exists. In our view, Valdez ignores the plain meaning of subdivision (c). In addition, by endorsing the application of section 654 to "stay" the sentences on the individual convictions, Valdez renders subdivision (c) superfluous.
Valdez appears to be an after-the-fact "attempt" to save convictions that run afoul of the prohibition in subdivision (c). Subdivision (c), however, cannot be overlooked or circumvented. It clearly prohibits the prosecution from obtaining multiple convictions for both the course of continuous sexual abuse and the individual acts comprising the course of conduct.
In view of the foregoing, we conclude the prosecution erred in charging Johnson, and the trial court subsequently erred in staying, rather than striking Johnson's convictions for the individual counts of lewdness and sodomy (Counts 2-6). Accordingly, Johnson's convictions for the individual counts of lewdness and sodomy must be reversed and stricken.[3]

DISPOSITION
Appellant's conviction for continuous sexual abuse, Penal Code section 288.5 (Count 1) is affirmed. Appellant's convictions on four counts of forcible lewd acts upon a child, Penal Code section 288 (Counts 2-3 & 5-6) and one count of sodomy, Penal Code section 286 (Count 4) are hereby reversed and ordered stricken. The Clerk of the Superior Court shall prepare and send to the Department of Corrections a corrected abstract of judgment in accordance with this disposition.
JOHNSON, Acting P.J., and BOLAND, J.[***], concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published are the title page, the two introductory paragraphs, the Factual and Procedural History, Section II of the Discussion and the Disposition.
[1] All references to statute are to the Penal Code unless otherwise indicated.
[**] See footnote *, ante.
[3] Given our conclusion, the Attorney General and Johnson both agree the proper disposition is to strike the individual counts.
[***] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.